IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:04CR246-V

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.           )<br>)<br>LARKEN MONTELL WRIGHT,   )<br>)<br>Defendant.      ) | MEMORANDUM AND RECOMMENDATION |

**THIS MATTER** is before the Court on Defendant's "Motion To Suppress Evidence And Statement Of Defendant ... " filed May 4, 2005 (document #12). The "United States Response To Motion To Suppress Evidence" (document #15) was filed May 27, 2005, and a hearing was conducted by the undersigned on June 17, 2005. Thus, the subject Motion is now ripe for resolution.

## I. PROCEDURAL AND FACTUAL BACKGROUND AND FINDINGS

The events at issue occurred on April 9, 2004 at approximately 4:40 p.m. in Martin Luther King Park, which is located at 2600 Ravencroft Drive in Charlotte. Charlotte-Mecklenburg Police Officer Steven D. Davis was patrolling the park, which has a history of prostitution-related arrests, when he observed the Defendant's white GMC truck. As Office Davis approached the truck, he observed a female raise her head from the Defendant's "lap area" and quickly climb into the back seat of the truck.

Given the problem with prostitution in the park, this quite understandably made Officer Davis suspicious. His suspicions only increased by the unfolding of events, beginning with the fact that the Defendant did not know the name of his passenger, although he was able to tell the Officer "where he picked her up." The Defendant identified himself, and the passenger told Officer Davis that her name was "Angelina Martin." As he was initially questioning the Defendant and his female passenger, Officer Davis noticed two other things that confirmed his suspicions of unlawful activity in the vehicle: a "freshly opened" condom wrapper and the fact that the female's pants were unbuttoned and "partly down."

While he was seeking to identify the Defendant and his passenger, Officer Davis radioed for assistance. Officer Richard L. Greene, who was familiar with Martin Luther King Park in general and with its history of prostitution-related arrests in particular, responded to the scene. However, before Officer Greene arrived, Officer Vaughn Pauls arrived and was able to positively identify the Defendant's passenger not as Angelina Martin, but as Yolanda Cooper, a person who had previously been arrested for prostitution. Furthermore, when Officer Davis checked on Ms. Cooper by her true name, he discovered there was an active warrant for her arrest (for unauthorized use of a motor vehicle). Quite properly, at that point Cooper was placed under arrest.

To recap, up to that point the Officers had approached a vehicle in an area known for prostitution-related activity, observed a female raise her head from the lap of the male driver and climb in the back seat (as a police car approached), determined that the driver did not know the passenger's name, learned that the passenger had given a false name, and once the female passenger's true identity was determined, realized that she was a known prostitute.

At this point Officer Greene noticed that the Defendant was "sweating and shaking." Officer Greene asked the Defendant if there were drugs or a weapon in the vehicle, questions which are entirely proper during a *Terry* stop, also known as an "investigative stop." The Defendant initially said nothing, looking away from Officer Greene, who repeated the question. This time the Defendant answered "Yes."

Officer Greene responded to the realization that the Defendant had a gun in the vehicle (in which they were both seated) by instructing him to place both hands on the steering wheel. He then asked the Defendant where the gun was located, and the Defendant told Officer Greene it was in the center console. Officer Greene found and removed a .22 handgun from the center console, after which other Officers removed the Defendant from the vehicle and placed him under arrest for carrying a concealed weapon. When a background check led to the discovery that the Defendant had a

3

prior felony conviction, he was also placed under arrest for possession of a firearm by a convicted felon. The length of time between the initial encounter and Ms. Cooper's arrest was approximately 14 minutes; the additional time between Ms. Cooper's arrest and the arrest of the Defendant was approximately three minutes (for a total of 17 minutes between initial encounter and the Defendant's arrest).

The Defendant's interpretation of the events of April 9 are in marked contrast to those set forth above. Rather than a proper Terry or investigative stop based on "reasonable suspicion," the Defendant argues that "[t]here was no appearance of illegal activity being conducted by the car's occupants" when Officer David initially approached the Defendant's truck. The Defendant neglects to mention the above-noted suspicious conduct, the fact that the Defendant did not know his passenger's name when asked, that she initially gave a false name, or that when her true identity was discovered she was further identified as a known prostitute with an active warrant for her arrest.

The Defendant also objects to being asked questions by the police prior to being advised of his Miranda rights. However, as the undersigned noted at the June 17 hearing, questions about the presence of firearms in a vehicle are permitted during a traffic or investigative stop, that is, Miranda warnings are not required for

4

questions of this limited nature to be posed, whether or not the individual being questioned is, at that moment, "free to leave."

## II. CONCLUSIONS OF LAW

It is well settled that an officer may stop and briefly detain a person for investigative purposes (known, as noted above, as a Terry or investigative stop) when there is "reasonable suspicion," based on "articulable facts," that the suspect may be engaged in unlawful activity. See, e.g., United States v. Arvizu, 544 U.S. 266 (2002)(reaffirming "totality of the circumstances test" in determining whether there is the requisite "reasonable suspicion" for an investigative stop); United States v. Sokolow, 490 U.S. 1, 7 (1989); and Terry v. Ohio, 392 U.S. 1, 30 (1968).

As the Fourth Circuit has long instructed, whether there is the requisite "reasonable suspicion" to conduct an investigative stop--as there clearly was in this case--is in its essence "a common-sensical proposition ... [properly] crediting the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). Accord Arvizu, 544 U.S. at 273 (permitting "officers to draw on their experience and special training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person")(internal quotation omitted).

5

Applying this well-established principle here, it is inconceivable that any court would fault the officer for his initial approach to the vehicle, or for the law enforcement response which followed. The facts are noted above and need not be repeated here; suffice it to say that one does not need to be a specially trained law enforcement officer to be reasonably suspicious of the conduct of the Defendant and his "companion" in Martin Luther King Park at approximely 4:40 p.m. on April 9, 2004.

This conclusion--that the Officer had reasonable suspicion to justify a 17-minute investigative stop on April 9--is confirmed by the range of conduct the Fourth Circuit has found sufficient for this purpose. See, e.g, United States v. Harris, 39 F.3d 1262, 1268-69 (4th Cir. 1994)(officer's observation of man leaving apartment in a vehicle after confidential informant advised drug delivery was imminent constitutes reasonable suspicion to stop vehicle); United States v. Turner, 933 F.2d 240, 242-44 (4th Cir. 1991)(officer with experience in narcotic investigations had reasonable suspicion to stop and determine whether subject was "cooking" illegal drugs after observing her carry cup of water out of convenience store, walk to car, and lean over front seat as if to hide something; and United States v. Moore, 817 F.2d 1105, 1107 (4th Cir. 1987)(officer's nighttime observation of man walking away from otherwise deserted area where burglar alarm had just gone off constitutes reasonable suspicion to stop man).

The Defendant's contention that the Officers erred by not advising him of his Miranda rights prior to asking about weapons in his vehicle is also without merit. As noted above, Miranda warnings are simply not required during a Terry stop. See, e.g., United States v. Leshuk, 65 F.3d 1105, 1108-09 (4th Cir. 1995). Rather, Miranda only applies once a defendant is arrested and in custody, which in this case did not occur until *after* the gun was discovered. Accord Berkemer v. McCarty, 468 U.S. 420, 440 (1984)(Miranda only applies to custodial interrogation, that is, once a "suspect's freedom of action is curtailed to a degree associated with formal arrest"); and United States v. Howard, 115 F.3d 1151, 1154 (4th Cir. 1997).

And finally, even if the Defendant had been arrested prior to the questions about weapons having been posed--which he clearly was not--his responses would be admissible under the "public safety exception" to Miranda first recognized by the Supreme Court in New York v. Quarles, 467 U.S. 649 (1984). The public safety exception permits pre-Miranda questioning *at the scene of an arrest* regarding weapons, drug use, or other matters relevant to the safety of officers or the general public. Accord United States v. Mobley, 40 F.3d 688, 692-93 (4th Cir. 1994)(extending "public safety exception" to post-Miranda warning questioning, even after the right to counsel has been asserted).

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersigned respectfully **RECOMMENDS** that the "Motion To Suppress Evidence And Statement Of The Defendant ... " (document #12) be **DENIED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised, pursuant to 28 U.S.C. §636(b)(1)(c), that written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within ten (10) days after its receipt. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D.N.C. 1990). Failure to file objections to this Memorandum and Recommendation with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 93-94 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties (defense counsel Mark P. Foster, Jr. And AUSA Karen S. Marston); and to the Honorable Richard L. Voorhees.

**SO ORDERED**, this 20th day of June, 2005.

_____
**CARL HORN, III**
**U.S. Magistrate Judge**